### NEAL et vir. v. MEDCALF.
### No. 4834.

Court of Civil Appeals of Texas.
El Paso.

Oct. 31, 1951.

Scarborough, Yates, Scarborough & Black, Abilene, Rawlins & Linne, Monahans, for appellants.

Noel D. Cason, Midland, R. E. Coon, Kermit, for appellee.

PRICE, Chief Justice.

This is an appeal from a judgment in a child custody case. On August 7, 1950, the District Court of Winkler County entered a divorce decree dissolving the bonds of matrimony theretofore existing between Eunice Medcalf and L. R. Medcalf. The decree divided the custody of their female minor child, Billy Medcalf, between the parties. Each party was to have the custody for six months of the year. L. R. Medcalf was to have custody for the first six months and his wife for the next, the custody to so alternate from year to year. After the decree had become final Eunice Medcalf intermarried with Phillip Neal. On or about the expiration of the first six months subsequent to the entry of the decree of divorce L. R. Medcalf, hereinafter referred to as plaintiff, filed this action against Eunice Neal, joining her husband pro forma, to modify the decree of divorce so as to award him the exclusive custody of the said Billy Medcalf. For grounds for the change of custody and modification of decree he averred the situation is so changed with respect to said defendant Eunice Neal and her home since the time of the aforesaid divorce that it would be for the best interest and welfare of Billy Medcalf that the said minor child be placed by the court in the permanent care and custody of this plaintiff. He averred in substance that since the custody of the child had been awarded to him he had faithfully and efficiently discharged each and all of the duties incumbent upon him by such custody. He further averred that since the aforesaid divorce, defendant Eunice Neal has remarried, and is now the wife of Phillip Neal, who also resides in Winkler County, Texas, but is employed in Ector; the said Phillip Neal is the father of two minor children by a former marriage, namely Phillip Rex Neal, Jr., a boy now about three years of age, and Perry Neal, a boy about two years of age. Defendant's home is now dominated by her new husband, Phillip Neal, who is but slightly known by the aforesaid minor child, Billy Medcalf; upon plaintiff's information and belief Phillip Neal does not maintain a home for the above mentioned children of his own blood, but said children of tender years have been and are at the pendency of this suit in the home of relatives in another state. Phillip Neal has an entirely different outlook on morals, family obligations, family connections, religion and care and maintenance of a home than that enjoyed now by the said Billy Medcalf; she has been reared in a different home atmosphere from that of the defendant Phillip Neal; in a home such as defendant's she would be subjected to the will of a stepfather who has evidenced no outstanding love and affection for his own two sons; said Billy Medcalf can no longer receive the undivided family love and affection from her mother Eunice Neal in any home said defendant might offer, but must share her mother's affections with two other children and a new husband; the child is now of an age which cannot readily grasp nor understand the necessity of moving from one parent's home to another parent's home each six months; her opportunity for physical and spiritual education and growth in the home of Phillip Neal must be shared with two other minor children while in the home of plaintiff she would have an opportunity for full development and closer personal supervision. It is further averred in substance that the best interest and welfare of the child would be best subserved by her remaining in the home of plaintiff, that at her age she needs to feel security, which feeling of security cannot be obtained in the present decree of divided custody, as she is an age where her best interests can only be served by continuous love and care from the parents, which love she does not have to share with three strangers; further that the home of plaintiff, the care and attention and love which he could give her is a better atmosphere for the care and custody of said child than is the home of defendant. Defendant's answer was by special exceptions on the ground that plaintiff's petition is insufficient for the reason that the custody of the minor had been determined by final judgment of the court and such petition does not set up any facts which would entitle plaintiff to have same relitigated; further that the petition is insufficient because it does not allege any facts showing any changed

condition which would entitle the plaintiff to relitigate the custody of the child. Defendants further specially plead that the decree rendered on August 7, 1950, was binding on all the parties.

The case came to trial on February 23, 1951, before the court without a jury. The court overruled defendants' special exception, to which action of the court defendants excepted. The judgment recites the court heard the evidence and argument of counsel, and having questioned the parties jointly and the minor child, Billy Medcalf, separately in chambers, is of the opinion that sufficient evidence has been developed reflecting a changed condition such as did not exist at the time of the divorce judgment rendered by this court on August 7, 1950. It is ordered and adjudged that the full care and custody of the aforesaid minor child, Billy Medcalf, be vested in the plaintiff L. R. Medcalf, father of the minor child. The judgment gave the right of visitation to Mrs. Eunice Neal. From this judgment the defendants have appealed.

■ Appellants brief this case on one point of error—evidence being insufficient to show a changed condition, the trial court erred in modifying a former judgment. It may be that the plaintiff's petition does not state sufficient legal grounds for the modification of the former decree of divorce in regard to the custody of the minor, Billy. No point is made on this. It is probably immaterial, in a child custody case pleadings are perhaps of no great importance. As has been said, it is more a matter of evidence than pleading. Williams v. Perry, Tex.Com.App., 58 S.W.2d 31; Wilson v. Underhill, Tex.Civ.App., 131 S.W.2d 19; reversed on other grounds Wilson v. Wilson, 137 Tex. 528, 155 S.W.2d 601; Roberts v. Tippett, Tex.Civ.App., 239 S.W.2d 859. The welfare of the minor involved is the prime consideration. Stevens v. Denton, Tex.Civ.App., 195 S.W.2d 796; Haymond v. Haymond, 74 Tex. 414, 12 S.W. 90.

■ The judgment of August 7, 1950, authoritatively decided and established that at that date each party to the litigation was suitable and fit for the custody of the child,

and unless there has been a change of condition since the rendition of the decree whereby the best interests of the child requires a change or modification of custody the judgment of the trial court should be reversed. The decree of the trial court in a child custody case is entitled to great respect and deference if the findings be supported by sufficient evidence; even though there be conflicting evidence it is not the province of an appellate court to disturb same. In a child custody case the trial judge is the only one that can make binding and conclusive findings on disputed evidence.

■ It is elementary that not every change in condition justifies the modification of a former decree of divorce awarding the custody of the minor child or children. The changed condition must be such as reasonably could be said to injuriously affect the best interest of the minor.

It may be that a discussion of the evidence may throw light on whether or not the decree appealed from is legally justified.

The defendant Mrs. Neal has married Phillip Neal since August 7, 1950, the date of the divorce decree. He had at the date of the marriage, and has, two boys of tender years from a former marriage, dissolved by a decree of divorce. At the date of his last marriage these boys were cared for by relatives in Louisiana. At the time of his former marriage the lady with whom he married had two minor children. She testified here that Mr. Neal did not treat his two stepdaughters well and failed to adequately provide for them; that he showed partiality between his own children and his stepdaughters. Mr. Cathay testified he had lived as a neighbor to Phil Neal, that Neal treated his own children fairly well but his stepchildren were not so well taken care of. The youngest stepdaughter was in the house of witness quite often, she said she was hungry and ate lots of fruit, and she was undernourished.

There was evidence that defendant Mrs. Neal since the date of her decree had at times cursed in the presence of her child.

After the court had rendered judgment in this case in favor of defendant herein, a

rather unusual proceeding ensued. The court directed the Deputy Sheriff to deliver Billy to her mother. The deputy spoke to the child, who started crying and said "I don't want to go." The judge then asked the child what was wrong. Mr. Coon, counsel for the plaintiff, tendered the child for a private conference with the judge. The court then stated not without Mrs. Neal's consent. Counsel for the plaintiff then asked Mrs. Neal if she would consent, she declined to consent, whereupon the judge stated "That does not change it", directed the child be brought into his chambers, ordered that Mr. Medcalf and Mrs. Neal be present and that the court reporter accompany them. In pursuance of the orders the parties named, with Mr. Coon, counsel for the plaintiff, retired to his chambers. There the judge asked the child what was the trouble. She replied she didn't want to go with her mother, she didn't want to go with her because she was living with that man (meaning Neal) who had two little kids and would not even take care of them. She further stated that Mr. Neal would not take care of his children and left them dirty. Then the plaintiff made a statement to the judge, then Mrs. Neal made a statement to the judge that a short time before, in her presence, plaintiff had applied a vile epithet to her reflecting on her virtue. Mr. Medcalf denied this. Defendant accused plaintiff of having been drunk, which he promptly denied. The controversy between Mr. Medcalf and Mrs. Neal continued for some time in the presence of the judge. It is hard to determine whether it was a sort of confrontation of witnesses known to the civil courts, or the parties arguing the matter before the judge, rather than testifying. In the course of the proceeding in the judge's chambers Billy stated to her mother that she was not going to love her because she was living with that other man. The judge then stated he would go into court and withdraw his decree. Some time thereafter the court entered judgment in favor of plaintiff and gave the exclusive custody of the child to him. The judgment recites that after the court had withdrawn the original judgment that all parties agreed that the judge could talk to the child and

thereafter announce his decision, and that this has been done. The procedure above narrated seems to have been acquiesced in by all parties litigant. Complaint thereof is not made here.

It is fundamental, however, that while a minor whose custody is involved in a proceeding is not a party, its interests transcend the interests of the parties to the record in determining the right to the custody of the child. It is in the power of the court to deny custody to each.

Summarizing the effect of the evidence here the only matters justifying or tending to justify a change of custody was first, the defendant had since the date of the decree married a man with two children, that this man had not treated his two stepchildren of a former marriage with due kindness and affection, and in a measure had failed in his duty to support them; that he had shown partiality between his own children and his two stepchildren; second, that the defendant had at times sworn in the presence of the child; and third, the child desired to live with her father.

The evidence of mistreatment by defendant Neal of his other stepdaughters may authorize an inference that his new stepchild might so suffer. This inference may not be strong or absolutely necessary, but we are of the opinion that the trial judge, if he believed the evidence, had a right to make such inference.

If the mother frequently swore in the hearing of her minor daughter, this should be an element in determining whether she should be allowed the custody of her daughter.

The fact of the desires of the infant, other things being equal, is an element to be taken into consideration in determining custody. This does not hold true where the adverse party has produced this frame of mind in the infant. In this case while in the custody of plaintiff someone had evidently discussed with the child the character and conduct of her stepfather.

Where the custody of a minor has by a divorce decree been awarded to one party, one seeking a modification of

the decree changing the award has the burden of establishing changed conditions arising subsequent to the date of the decree which would materially affect the welfare of the child. Grego v. Schneider, Tex.Civ. App., 154 S.W. 361; Futch v. Futch, Tex. Civ.App., 299 S.W. 289; Leonard v. Leonard, Tex.Civ.App., 218 S.W.2d 296. The decree is res adjudicata as to all matters prior to its date. Pearson v. Pearson, Tex. Civ.App., 195 S.W.2d 188.

If there is substantial evidence, although controverted, sustaining the trial court's finding of changed conditions materially affecting the welfare of the child, the finding is binding on an appellate court. 15 Tex.Jur. p. 673, Sec. 169; Prendergast v. Prendergast, Tex.Civ.App., 122 S.W.2d 710; Bohls v. Bohls, Tex.Civ.App., 188 S. W.2d 1003; Penn v. Abell, Tex.Civ.App., 173 S.W.2d 483. The appellate court may not make findings on the evidence—this is the province of the trial court, and as stated if sustained by substantial evidence these findings are final and binding.

We have read and re-read the evidence in this case and cannot find there is not substantial evidence sustaining the finding of the trial court. The judgment of the trial court is affirmed.